1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN CARD,

11              Plaintiff,                      No. CIV S-06-1027 GEB GGH P

12        vs.

13   TOM L. CAREY, et al.,                      ORDER AND

14              Defendants.                     FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  This action is proceeding on the amended complaint filed October 26, 2006.

19   Plaintiff alleges that he received inadequate medical care for his knee injuries.

20              Pending before the court is plaintiff's motion to compel filed November 26, 2007,

21   and defendants' summary judgment motion filed February 21, 2008.  The motion is made on

22   behalf of defendants Grannis, Kofoed, Low, Obedoza, Rallos, Tan, Thor and Traquina.  On

23   February 27, 2008, defendant Nunez was dismissed.

24              After carefully reviewing the record, the court orders plaintiff's motion to compel

25   denied and recommends that defendants' summary judgment motion be granted in part and

26   denied in part.

II.  <u>Motion to Compel</u>

Plaintiff first contends that in response to his requests for production of documents, defendants Traquina, Rallos and Tan stated that they would provide him with duty statements but failed to do so.  In defendants' December 17, 2007, opposition, they state that the failure to provide the duty statements was an oversight by defense counsel.  Defendants state that the duty statements have been mailed to plaintiff.  Accordingly, the court finds this portion of the motion to compel resolved.

Plaintiff contends that defendants Traquina, Rallos and Tan refused to provide any of the documents requested in his request for production of documents.  Plaintiff states that defendants' main reason for refusing to provide the documents was that they did not have them in their possession, custody or control.  Plaintiff argues that defendants as medical doctors at California State Prison-Solano have access to all medical records.

Plaintiff does not identify any specific requests for production of documents to which defendants objected that the documents sought were not in their possession, custody or control.  The court has reviewed the requests for production of documents attached to the motion to compel.  Defendants did not object to every request on the ground that the documents sought were not in their possession, custody or control.  In addition, some responses to these requests to which this objection was made contained other objections.

Because plaintiff has failed to identify the specific requests he seeks to compel responses to the court finds that this portion of the motion to compel is not well supported.

Plaintiff contends that in response to his request for production of documents, defendants Thor and Low, with little exception, responded that they were not presently employed by the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff contends that in responses to interrogatories, defendant Thor stated that he works at Salinas Valley State Prison, California State Prison-Corcoran and Pelican Bay State Prison.  Defendant Low stated that he works at three other prisons.  Plaintiff argues that nothing would prevent defendants from

1   obtaining the requested documents.

2           Attached as an exhibit to the motion to compel are defendants' responses to

3   plaintiff's interrogatories.  Defendants Thor and Low state that they are no longer employed by

4   CDCR but that they used to work at several different prisons.  Defendants' ability to obtain

5   CDCR records is curtailed by the fact that they no longer work for CDCR.  In any event, because

6   plaintiff again fails to identify any specific requests which he seeks to compel further responses

7   to, the court finds that this portion of the motion to compel is not well supported.

8           Plaintiff states that in response to his request for production of documents,

9   defendant Kofoed objected that he was no longer employed by CDCR.  Plaintiff claims that in

10  responses to interrogatories, defendant Kofoed indicates that he is still employed by CDCR.

11  Attached to the motion to compel are defendant Kofoed's responses to interrogatories.  In

12  responses to these interrogatories, it is not entirely clear that defendant Kofoed no longer works

13  for CDCR.  However, plaintiff again fails to specifically identify any at-issue requests for

14  production of documents.  Accordingly, the court finds that this portion of the motion to compel

15  is not well supported.

16          Plaintiff next argues that in response to his request for production of documents,

17  defendant Obedoza stated that he is not presently employed by CDCR.  Plaintiff argues that

18  defendant Obedoza did not contact him to obtain permission to access his medical files or other

19  documents.  The court does not understand plaintiff's argument.  In any event, plaintiff does not

20  identify any specific at-issue requests for production of documents.  Accordingly, this portion of

21  the motion to compel is not well supported.

22          Finally, plaintiff argues that in response to his request for production of

23  documents defendant Grannis repeatedly stated that the documents sought were not within her

24  possession, custody or control.  Plaintiff argues that defendant Grannis failed to explain how she

25  attempted to obtain the requested records.  Plaintiff has failed to identify any specific at-issue

26  requests for production.  Accordingly, this portion of the motion to compel is not well supported.

1    For the reasons discussed above, plaintiff's motion to compel is denied in its

2  entirety.  The court observes that in their opposition, defendants state that in the spirit of

3  cooperation, they sent plaintiff copies of his medical records.  Therefore, to the extent plaintiff

4  sought copies of his medical records in the pending motion, the motion to compel is resolved.

5  III.  Summary Judgment Motion

6         A. Summary Judgment Standards Under Fed. R. Civ. P. 56

7    Summary judgment is appropriate when it is demonstrated that there exists "no

8  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9  matter of law."  Fed. R. Civ. P. 56(c).

10    Under summary judgment practice, the moving party

11    always bears the initial responsibility of informing the district court
      of the basis for its motion, and identifying those portions of "the
12    pleadings, depositions, answers to interrogatories, and admissions
      on file, together with the affidavits, if any," which it believes
13    demonstrate the absence of a genuine issue of material fact.

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

15  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

16  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

17  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

18  should be entered, after adequate time for discovery and upon motion, against a party who fails to

19  make a showing sufficient to establish the existence of an element essential to that party's case,

20  and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

21  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

22  necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

23  should be granted, "so long as whatever is before the district court demonstrates that the standard

24  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

25  2553.

26  \\\\\

1    If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

4    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

5    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

6    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

7    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

8    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

9    material, i.e., a fact that might affect the outcome of the suit under the governing law, see

10   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

11   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

12   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

13   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14   In the endeavor to establish the existence of a factual dispute, the opposing party

15   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

20   56(e) advisory committee's note on 1963 amendments).

21   In resolving the summary judgment motion, the court examines the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

26   at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

1  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

2  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

3  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

4  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

5  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

7            On February 8, 2007, the court advised plaintiff of the requirements for opposing

8  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

9  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

10  1988).

11            B.  Legal Standard for Eighth Amendment Claim

12            In order to state a § 1983 claim for violation of the Eighth Amendment based on

13  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

14  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

15  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

16  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

17  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

18  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

19  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

20            A serious medical need exists if the failure to treat a prisoner's condition could

21  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

22  that a prisoner has a serious need for medical treatment are the following:  the existence of an

23  injury that a reasonable doctor or patient would find important and worthy of comment or

24  treatment; the presence of a medical condition that significantly affects an individual's daily

25  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

26  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

(9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u>

<u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

    In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

defined a very strict standard which a plaintiff must meet in order to establish "deliberate

indifference." Of course, negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978.

However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

which is so obvious that it should be known) is insufficient. <u>Id.</u> at 836-37, 114 S. Ct. at 1979.

Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

should have known of the risk. <u>Id.</u> at 842, 114 S. Ct. at 1981.

    It is nothing less than recklessness in the criminal sense – subjective standard –

disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at

1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837,

114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at

847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was

obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at

1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

    Also significant to the analysis is the well established principle that mere

differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>,

662 F.2d 1337, 1344 (9th Cir. 1981).

    Moreover, a physician need not fail to treat an inmate altogether in order to violate

that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.

1989). A failure to <u>competently</u> treat a serious medical condition, even if some treatment is

prescribed, may constitute deliberate indifference in a particular case.  Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant."  McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants.  The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

### C.  Undisputed Facts

Defendant Grannis is the Chief of the Inmate Appeals Branch for the California Department of Corrections and Rehabilitation.  Defendant Grannis is responsible for investigating and responding to administrative appeals at the Director's Level of Review.

At all relevant times, defendant Kofoed was a physician under contract in the Orthopedic Department at California State Prison-Solano.  Defendant Kofoed also worked as an orthopedic consultant at the California Medical Facility.  Defendant Kofoed is no longer employed by the California Department of Corrections and Rehabilitation.

Defendant Low worked as a physician and surgeon at CSP-Solano from July 1, 1998, to August 1, 2002, and from December 1, 2006, to June 14, 2007.  His duties included evaluating, diagnosing and prescribing medications and treatments in a primary care setting.

Defendant Obedoza worked as a physician and surgeon at CSP-Solano from July 1, 1998, to August 1, 2003.  His duties included evaluating, diagnosing and prescribing medications and treatments in a primary care setting.

Defendant Rallos has been employed as a physician at CSP-Solano since June 2003.  His duties included evaluating, diagnosing and prescribing medications and treatments in a primary care setting.

Defendant Tan has been employed at CSP-Solano as a physician and surgeon since July 2003.  His duties included evaluating, diagnosing and prescribing medications and treatments in a primary care setting.

Defendant Thor was the Chief Physician and Surgeon at CSP-Solano from September 2002 to April 2006.  He retired from CDCR in April 2006.

Defendant Traquina has been the Chief Medical Officer at CSP-Solano since March 2002.

On November 13, 1998, defendant Obedoza evaluated plaintiff concerning bilateral knee arthritis.  Obedoza declaration, ¶ 5.  Defendant Obedoza assessed plaintiff's condition to be degenerative joint disease in his knees.  Id.  On September 25, 2000, a doctor who is not a defendant submitted a request for an orthopedic consultation for plaintiff for further evaluation of his knees.  Id., Exhibit A, p. 970.

\\\\\

1   On December 9, 2000, defendant Kofoed, an orthopedic consultant, examined

2   plaintiff.  Id., Exhibit A, p. 970.  Defendant Kofoed determined that plaintiff had degenerative

3   joint disease of the knees *and* lateral meniscus tear of the right knee.  Id.  Plaintiff stated he did

4   not want surgery.  Id.  Defendant Kofoed ordered knee braces and that plaintiff's knees should be

5   observed.  Id.

6   On December 12, 2001, defendant Obedoza examined plaintiff concerning his

7   complaint of right knee pain.  Id., ¶ 8.  Defendant Obedoza ordered an orthopedic consult with

8   defendant Kofoed.  Id.  Defendant Obedoza also issued plaintiff medical chronos for crutches for

9   60 days and a 10 day lay in.  Id.  Defendant Obedoza also ordered pain medication, a knee sleeve

10  and instructions for plaintiff to follow-up with him in 10 days.  Id.

11  On January 12, 2002, defendant Kofoed examined plaintiff.  Id., Exhibit A, pp.

12  464, 599.  Defendant Kofoed ordered a general surgery consultation to evaluate soft tissue

13  swelling, a right knee sleeve and extended crutches for 60 days.  Id.

14  On July 12, 2002, defendant Obedoza evaluated plaintiff for renewal of pain

15  medication.  Id., Obedoza declaration, ¶ 10.  At that time, defendant Obedoza ordered plaintiff a

16  medical chrono for crutches for 1 year and completed a CDC form 1845, verifying plaintiff to be

17  permanently mobility impaired not impacting his placement at the institution.  Id.

18  On November 27, 2002, defendant Traquina evaluated plaintiff for his knee

19  problem.  Traquina declaration, ¶ 5.  At that time, defendant Traquina issued a medical chrono

20  for a knee brace.  Id.

21  On January 13, 2003, defendant Kofoed performed an arthroscopic debridement

22  (removal of joint material or degenerative tissue) procedure to plaintiff's right knee.  Kofoed

23  declaration, ¶ 6.  His notes from the surgery say that an MRI showed a medial miscus tear.  Id.,

24  exhibit A, p. 1024.  Defendant Kofoed wrote in the post-surgery notes that plaintiff's lateral joint

25  line pain was becoming quite severe and radiating down the lateral aspect of the right leg.  Id.,

26  exhibit A, p. 1024.

On January 16, 2003, defendant Traquina evaluated plaintiff post-status of his right knee arthroscopic debridement procedure.  Traquina declaration, ¶ 6.  At that time, defendant Traquina renewed plaintiff's medication and ordered a medical chrono allowing plaintiff the use of crutches for 4 weeks.  Id.  Defendant Traquina also ordered a medical chrono allowing 29 days lay-in to limit the use of the right knee.  Id.

On May 18, 2005, defendant Tan examined plaintiff for bilateral knee pain.  Tan declaration, ¶ 6.  Defendant Tan ordered x-rays of both knees and prescribed pain medication.  Id.

On June 3, 2005, defendant Rallos evaluated plaintiff for knee pain.  Rallos declaration, ¶ 5.  Defendant Rallos determined that plaintiff had bilateral knee tenderness with mild swelling.  Id.  Defendant Rallos submitted a request for an orthopedic consultation.  Id.

On June 7, 2005, the Medical Authorization Review Committee (MARC) reviewed the request for the orthopedic consultation.  The MARC denied the request for the consultation until "the physician has an opportunity to speak w Dr. Kofoed re: his recommendations for treatment for this..."  Traquina declaration, Exhibit A, p. 951.  The section of the MARC form for recommendations stated, "interest in total knee replacement; MRI first? Prior to ortho consult?"  Id.  Defendant Traquina was a member of the MARC.  Traquina declaration, ¶ 7.

The MARC wanted to proceed with more conservative forms of treatment before approving a major surgery such as total knee arthroplasty (knee joint replacement) to plaintiff's knees.  Id., ¶ 8.  The MARC was concerned about plaintiff's weight of 287 pounds presenting surgery complications.  Id.  In addition, plaintiff had a history of hypertension and received regular cardiovascular chronic care treatment.  Id.

On June 15, 2005, defendant Ralllos examined plaintiff concerning a request for a lay-in extension medical chrono.  Rallos declaration, ¶ 7.  Defendant Rallos ordered a light duty chrono for 6 months and prescribed pain medication.  Id.  Defendant Rallos explained to plaintiff

that the MARC had denied his request for outside orthopedic evaluation with the request that defendant Rallos first speak with defendant Kofoed concerning plaintiff's need for knee replacement surgery.  Id.

On July 19, 2005, defendant Rallos spoke with defendant Kofoed regarding plaintiff's need for knee replacement surgery.  Id., ¶ 8.  Defendant Kofoed recommended that defendant Rallos send plaintiff back to him for re-evaluation.  Id.

On July 28, 2005, defendant Rallos and Dr. Mahmoud submitted a request for an orthopedic consultation with defendant Kofoed relative to plaintiff's knee arthritis.  Id., ¶ 9. Plaintiff was persistent in his efforts to gain approval for bilateral knee replacement surgery.  Id.,

On August 16, 2005, defendant Kofoed examined plaintiff's knees concerning his arthritis.  Kofoed declaration, ¶ 9.  Defendant Kofoed determined that plaintiff would eventually need knee replacement surgery but he did not feel there was an immediate need for surgery.  Id. According to defendant Kofoed, the surgery was elective for plaintiff.  Id.  Defendant Kofoed recommended scope debridement and lateral release to plaintiff's left knee also known as arthroscopic debridement.  Id.  His notes from this examination state that plaintiff had been waiting for this procedure on his left knee for about 3 years, but apparently the prior request was misplaced.  Id., Exhibit A, p. 946.

On August 25, 2005, the MARC approved the arthroscopic debridement procedure.  Id., ¶ 10.  Defendant Kofoed performed this procedure on plaintiff's left knee on September 20, 2005.  Id., ¶ 10.  He also performed a partial medial meniscectomy and a lateral release.  Id., Exhibit A, p. 1011.

On November 8, 2005, defendant Kofoed examined plaintiff to determine he needed bilateral knee replacement.  Id., ¶ 11.  Defendant Kofoed's assessment was that plaintiff had advanced arthritis in both knees.  Id.  Plaintiff did not want cortisone injections.  Id. Defendant Kofoed requested that plaintiff be evaluated by an outside orthopedic consultant at the University of California, San Francisco Hospital or Queen of the Valley Hospital (QVH)

1 concerning plaintiff's request for knee replacement.  Id.  His notes from this examination state

2 that the conservative treatments had been exhausted.

3       On December 29, 2005, the MARC approved plaintiff's request for bilateral knee

4 replacement evaluation and surgery.  Id., Exhibit A, pp. 536, 542.

5       On January 26, 2006, plaintiff was evaluated by Orthopedic Consultant Dr.

6 Shiflett at QVH.  Id., Exhibit A, p. 923.

7       On February 6, 2006, defendant Tan saw plaintiff for hypertension and pain

8 management.  Tan Declaration, ¶ 7.  Plaintiff did not want to take methadone.  Id.  Defendant

9 Tan offered an alternative medication for his knees, but plaintiff refused.  Id.  Defendant Tan

10 adjusted plaintiff's hypertension medication and ordered a follow-up appointment.  Id.

11       On March 13, 2006, defendant Tan saw plaintiff for hypertension and knee pain.

12 Id., ¶ 8.  Defendant Tan ordered Darvocet for pain, advised plaintiff to lose weight to help control

13 his hypertension and his knee osteoarthritis.  Id.  Defendant Tan adjusted plaintiff's hypertension

14 medication and advised a low salt diet.  Id.

15       On April 24, 2006, defendant Tan saw plaintiff for right knee pain and changed

16 his medication from Darvocet to Tylenol # 3 as plaintiff requested.  Id., ¶ 9.  Defendant Tan also

17 ordered a follow-up appointment.  Id.

18       On June 6, 2006, defendant Tan saw plaintiff for medication renewal for both

19 knees.  Id., ¶ 10.  Defendant Tan restarted methadone and called the Utilization Management

20 regarding plaintiff's knee replacement authorization.  Id.

21       Plaintiff had arthroplasty surgery to his right knee at QVH on August 30, 2006.

22 Traquina declaration, ¶ 16.

23       D.  Analysis

24       At the outset, the court will clarify plaintiff's claims.  Plaintiff has two separate

25 knee problems: arthritis and a torn meniscus in his right knee.  Plaintiff alleges that defendants

26 delayed in providing him with knee replacement surgery.  Plaintiff argues that defendants chose

1   to treat his knee problems conservatively rather than perform the surgery when it was clear that

2   conservative treatment would not work.

3           Plaintiff has sued defendants in their individual and official capacities.

4   Accordingly, the court finds that plaintiff seeks damages and injunctive relief.

5           Defendants argue that they are entitled to qualified immunity.  Qualified immunity

6   involves a sequential three step analysis: 1) viewing the facts in the light most favorable to

7   plaintiff whether there was a constitutional violation; 2) whether the constitutional right was well

8   established; and 3) whether it was unreasonable for the official to believe his actions

9   constitutional.  Saucier v. Katz, 533 U.S. 194, 200-201, 121 S. Ct. 2151, 2155-2156 (2001).

10          *Defendant Kofoed*

11          Plaintiff alleges that defendant Kofoed acted with deliberate indifference to his

12   serious medical needs by failing to recommend his knee replacement surgery sooner than he did.

13   Defendants move for summary judgment on grounds that defendant Kofoed did not act with

14   deliberate indifference.  Defendant Kofoed's treatment of plaintiff is summarized below.

15          On December 9, 2000, defendant Kofoed conducted an orthopedic consultation of

16   plaintiff.  At that time, he ordered knee braces and further observation of plaintiff's knees.

17   Plaintiff stated that he did not want knee surgery.  Approximately 2 years later, defendant Kofoed

18   examined plaintiff on January 12, 2002.  At that time, defendant Kofoed ordered a general

19   surgery consultation, a right knee sleeve and crutches.  One year later, on January 13, 2003,

20   defendant Kofoed performed an arthroscopic debridement procedure to plaintiff's right knee.

21          Defendant Kofoed saw plaintiff on August 16, 2005.  At that time, the MARC had

22   denied defendant Rallos's request for a consultation with an outside orthopedist until he

23   consulted with defendant Kofoed.  After examining plaintiff on August 16, 2005, defendant

24   Kofoed recommended that plaintiff's left knee have the arthroscopic debridement procedure.

25   Plaintiff had been waiting for this procedure for approximately three year because the prior

26   request was misplaced.  Defendant Kofoed felt that plaintiff would eventually need knee

1   replacement surgery, but there was no immediate need for it.

2          On September 20, 2005, defendant Kofoed performed the arthroscopic

3   debridement procedure on plaintiff's left knee.

4          On November 8, 2005, defendant Kofoed requested that plaintiff be sent for an

5   outside orthopedic consultation for knee replacement surgery. Defendant determined that

6   conservative treatments had been exhausted.

7          Defendants argue that the treatment described above does not demonstrate

8   deliberate indifference.

9          It is undisputed that defendant Kofoed chose to try more conservative treatments

10  before ordering knee replacement surgery.

11         In his verified opposition, plaintiff admits that in 2000 he told defendant Kofoed

12  that he did not want knee replacement surgery. However, states that he decided against surgery

13  after defendant Kofoed advised him that the surgery would be extremely painful, would not

14  necessarily cure his problems and could possibly cause more problems. Plaintiff stated that he

15  took defendant Kofoed's advice to give other treatments a chance.

16         The decision to treat plaintiff's knee problems conservatively does not constitute

17  deliberate indifference. Plaintiff has presented no expert medical evidence suggesting that

18  starting with conservative treatment was medically inappropriate. The record clearly shows that

19  once it became clear that conservative treatment was not going to work, knee replacement

20  surgery was ordered. In particular, approximately 2 ½ months after the arthroscopic debridement

21  procedure on plaintiff's left knee, defendant Kofoed determined that conservative treatments had

22  not worked and that knee replacement surgery was warranted.

23         However, the record also shows delays in plaintiff's receipt of the conservative

24  treatment. Had these delays not occurred, then plaintiff would have received his knee

25  replacement sooner. In particular, in January 2002 defendant Kofoed ordered a general surgery

26  consultation and plaintiff had arthroscopic debridement on his right knee one year later. The

15

1   record does not explain why it took one year from the time defendant Kofoed ordered the general

2   surgery consultation to when plaintiff received the procedure on his right knee.  Plaintiff's receipt

3   of the procedure on his left knee was delayed by approximately 3 years because the prior request

4   had been misplaced.   The record contains no information regarding how the record got

5   misplaced or by whom.  Defendant Kofoed does not address why he did not follow-up to make

6   sure that plaintiff received the procedure on his left knee.

7           Attached to plaintiff's amended complaints as an exhibit is a chrono issued by

8   defendant Kofoed on January 6, 2004, for plaintiff to use a cane.  Amended Complaint, Exhibit

9   14.  There is no explanation as to why defendant Kofoed did not order plaintiff's left knee

10  surgery at that time.  Defendant Kofoed does not discuss this chrono in his declaration.

11          Because defendant Kofoed does not explain his involvement in the delay in

12  plaintiff's receipt of the right and left knee arthroscopic debridement surgery, the court finds that

13  he has not met his burden of demonstrating the absence of genuine issues of material fact.

14  Accordingly, he should not be granted summary judgment.

15          Having found that defendant Kofoed is not entitled to summary judgment as to the

16  merits of plaintiff's claims, the court goes on to the second and third steps of the qualified

17  immunity analysis.  As to the second step, the court finds that plaintiff's constitutional right to

18  adequate medical care was well established.  The court cannot evaluate the third step of the

19  qualified immunity analysis because not enough facts are known regarding the reasons for the

20  delay in the surgery.  Accordingly, defendant Kofoed is not entitled to qualified immunity.

21          The court also makes the following observations regarding plaintiff's knee

22  problems.  It is undisputed that plaintiff suffered from two separate injuries, i.e. the torn miniscus

23  in his right knee and arthritis in both knees.  Defendants' counsel does not clearly address

24  whether the arthroscopic procedures and knee replacement surgery were meant to treat both

25  problems or just one.  Nor does counsel address the relationship, if any, between these knee

26  problems and their treatment.  Therefore, defendant Kofoed should not be granted summary

1  judgment because he does not explain whether the treatment he ordered treated both of plaintiff's

2  knee problems and if not, then why not.

3        *Defendant Obedoza*

4        Obedoza argues that he should be granted summary judgment because he did not

5  act with deliberate indifference.  Defendant Obedoza's treatment of plaintiff is summarized

6  below.

7        On November 13, 1998, defendant Obedoza diagnosed plaintiff as suffering from

8  bilateral knee arthritis.  The court cannot read from defendant Obedoza's entry in plaintiff's

9  medical records what treatment, if any, he prescribed for plaintiff that day.  Obedoza declaration,

10  Exhibit A, p. 635.  Defendant Obedoza next saw plaintiff approximately 3 years later on

11  December 12, 2001.  At that time, he ordered an orthopedic consultation with defendant Kofoed,

12  issued a medical chrono for crutches, a 10 day lay-in, pain medication, a knee sleeve and

13  instructions for a follow-up.

14        Seven months later on July 12, 2002, defendant Obedoza ordered plaintiff a

15  medical chrono for crutches for 1 year and completed a CDC form 1845 verifying plaintiff to be

16  permanently mobility impaired not impacting his placement in the institution.  Defendant

17  Obedoza wrote on the 1845 form "knee scope/debridement pending."  Obedoza declaration,

18  exhibit 1, p. 897.  Defendant Obedoza provided no further treatment of plaintiff for his knee

19  problems.

20        The entry in plaintiff's medical records does not suggest that defendant Obedoza

21  acted with deliberate indifference to his serious medical needs on November 13, 1998.  On

22  December 12, 2001, defendant Obedoza ordered treatment and an orthopedic consultation. This

23  does not constitute deliberate indifference.

24        On July 12, 2002, defendant Obedoza ordered further treatment.  However, his

25  notes indicate that he was aware that plaintiff was waiting for the knee procedure.  At that time,

26  plaintiff had been waiting 6 months.  Defendant Obedoza apparently took no action to see why

1   the surgery had been delayed.  Nevertheless, the court finds that defendant Obedoza's failure to

2   look into why plaintiff had not received the surgery did not constitute deliberate indifference.

3   Defendant Kofoed, the orthopedist, had ordered the surgery – not defendant Obedoza, a primary

4   care physician.  There is no evidence in the record suggesting that defendant Obedoza had any

5   control over defendant Kofoed's surgery schedule.  In addition, the 6 month delay, while not

6   short, was not so long that the court would find per se deliberate indifference for defendant's

7   failure to investigate the delay.  For these reasons, the court finds that defendant Obedoza should

8   be granted summary judgment.

9            *Defendant Low*

10           Defendant Low moves for summary judgment on grounds that defendant Low

11  provided no care to plaintiff regarding his knees.  See Low declaration, ¶ 4.  Plaintiff has

12  presented no evidence demonstrating that defendant Low was involved in the alleged

13  deprivations.  For these reasons, defendant Low should be granted summary judgment.

14           *Defendant Rallos*

15           Defendant Rallos asserts he did not act with deliberate indifference.  The court

16  will summarize defendant Rallos's treatment of plaintiff below.

17           On June 5, 2005, defendant Rallos saw plaintiff for knee pain.  Defendant

18  submitted a request for an orthopedic consultation for plaintiff.  On June 7, 2005, the MARC

19  denied this request until "the physician had an opportunity to speak with Dr. Kofoed..."  The

20  MARC wanted to proceed with more conservative treatment before approving total knee

21  replacement surgery.

22           On June 15, 2005, defendant Rallos saw plaintiff again and ordered a light duty

23  chrono and prescribed pain medication.  Defendant Rallos told plaintiff that the MARC had

24  denied his request for an outside orthopedic evaluation with the request that defendant Rallos

25  first speak with defendant Kofoed.

26  \\\\\

On July 19, 2005, defendant Rallos spoke with defendant Kofoed.  Defendant Kofoed recommended that defendant Rallos send plaintiff back to him for a re-evaluation.  On July 28, 2005, defendant Rallos submitted a request for plaintiff to have an orthopedic consultation with defendant Kofoed.

The evidence set forth above does not demonstrate deliberate indifference by defendant Rallos.  The treatment given to plaintiff by defendant Rallos did not contribute to his delay in the receipt of any surgery.  Defendant Rallos took timely, active steps so that plaintiff could receive the surgery.

For these reasons, defendant Rallos should be granted summary judgment.

*Defendant Thor*

Defendant Thor moves for summary judgment on grounds that he did not act with deliberate indifference.  In his declaration submitted in support of the motion, defendant Thor discusses his involvement in plaintiff's treatment:

> 3.  My duties as Chief Physician and Surgeon involved the evaluation and supervision of the Physicians and Surgeons medical staff employed at CSP-Solano.  I oversaw the physician compliance, and approved contract medical services involving outside hospital and medical center care.  I also reviewed inmate/patient medical files in response to First Level 602 appeal grievances, and participated on the Medical Authorization Review (MAR) Committee.

> 4.  I am familiar with Plaintiff John Card's ("Plaintiff") medical condition relative to his knee, and the following facts are based upon my personal knowledge.  If called to testify thereto, I would and could do so competently.

> 5.  Plaintiff alleges no specific allegations against me relative to the medical chronology he has set forth in his amended complaint filed October 26, 2006.  My review of plaintiff's medical file indicate that I approved, at the request of his treating physicians on various dates from July 2002 through June 2005, medical chronos allowing plaintiff to receive knee braces, canes and crutches relating to his knee condition.  I was also involved in the discussions at CSP-Solano concerning plaintiff's knee replacement surgery.

> 6.  On or about August 15, 2005, Dr. Noriega responded to Plaintiff's First Level 602 Appeal grievance no. CSP S-05-1946 on my behalf.  I do not recall interviewing Plaintiff concerning this First Level appeal process, nor do I recall the events leading to Dr. Noriega's signature on this letter.  (See Complt., Exh. 18. pp. 6-7).

7. On November 8, 2005, Dr. Kofoed recommended plaintiff be examined by an offsite orthopedic consultant for knee replacement evaluation, stating that conservative treatments had been exhausted. The Medical Authorization Review (MAR) Committee approved the consultation request on December 29, 2005 (See Exh. A. Med. Recd. #00537). I then initiated the arrangements concerning the scheduling of the knee replacement surgery regarding Plaintiff.

8. On January 26, 2006, Plaintiff was examined by Dr. Michael Schifflett at Queen of Valley Hospital (QVH) for his osteoarthritis knee consultation. Dr. Schifflett recommended Total Knee Arthroplasty also known as Knee Joint Replacement on both knees, stating he would begin with the right knee first (See Exh. A, Med. Recd. # 00923).

9. I ran into difficulty concerning the logistics, custody guarding procedures and rehabilitation while scheduling Plaintiff's surgery. Dr. Kofoed initially recommended the University of California, San Francisco Hospital (UCSF), for plaintiff's surgery. Although it would have been easier working with UCSF, they did not have the means to provide rehabilitation services for plaintiff after his surgery. There were difficulties in arranging transportation for Plaintiff from CSP-Solno to UCSF and back. There were also difficulties in scheduling the custody guarding for plaintiff while he was to be hospitalized. In addition, UCSF had concerns over Plaintiff's weight (287 lbs) regarding his surgery. In light of the above issues, the surgery could not be scheduled until these issues had been resolved.

10. QVH was the alternative institution for Plaintiff's knee replacement surgery. Their hospital facility had a guarding unit which provided a separate access entrance to the hospital specifically for the incarcerated inmates. I was able to arrange for the custody guarding of the inmate through San Quentin Prison, and Plaintiff's knee replacement therapy was to be handled by QVH.

11. Any potential delays concerning the scheduling of Plaintiff's knee replacement surgery would have been possibly attributed to the above discussed issues, the doctor's availability, and the hospital bed's availability which are not unusual delays when dealing with prison inmates and outside medical institutions. I retired from CDCR in April 2006 and had no further involvement with plaintiff's medical care treatment. It is my understanding that Plaintiff received his right knee replacement surgery on August 30, 2006.

Thor declaration.

Defendant Thor's declaration indicates that he was involved in plaintiff's knee treatment by 1) participating in the MARC; 2) having Dr. Noriega sign the August 15, 2005, grievance on his behalf; 3) by scheduling plaintiff's knee surgery.

The August 15, 2005, grievance is attached as an exhibit to plaintiff's complaint. See court file no. 1, p. 39 of 43. In this appeal, plaintiff requested knee surgery. Dr. Noriega,

20

1  who signed the appeal on behalf of defendant Thor, stated in the response that Dr. Mahmoud

2  ordered an MRU on both knees and for plaintiff to have an urgent consultation with defendant

3  Kofoed.

4           Although there is a signature line on the August 15, 2005, appeal for defendant

5  Thor, the appeal was signed by Dr. Noriega.  There is no evidence demonstrating that defendant

6  Thor had any involvement in the preparation of this response.  For this reason, no liability

7  attaches to defendant Thor based on this appeal.  Even if defendant Thor were linked to this

8  appeal response, the response indicates that steps were finally being taken for plaintiff to receive

9  further surgical treatment for his knees.  The response to this appeal did not cause the at-issue

10  delays.  Accordingly, defendant Thor should be granted summary judgment as to any claims

11  regarding this administrative appeal.

12           As far as defendant Thor's involvement in the MARC, the evidence demonstrates

13  that on June 7, 2005, the MARC denied defendant Rallos's request for plaintiff to have an

14  outside orthopedic consultation for knee replacement surgery.  The MARC instead found that

15  defendant Rallos should consult with defendant Kofoed to obtain his recommendations.  The

16  MARC wanted to proceed with more conservative treatments and was concerned that plaintiff's

17  weight presented surgery complications.  The MARC was also concerned that plaintiff had a

18  history of hypertension.

19           As discussed above, in August 2005 defendant Kofoed determined that plaintiff

20  would eventually need knee replacement surgery but recommended that plaintiff have the long

21  delayed arthroscopic debridement procedure on his left knee first.  The MARC then approved

22  this procedure, which was performed in September 2005.  In November 2005, defendant Kofoed

23  determined that plaintiff should be evaluated by an outside doctor for total knee replacement

24  surgery.  In December 2005 the MARC approved the request for knee replacement surgery.

25           The court does not find that the MARC acted with deliberate indifference in June

26  2005 when it denied the request by defendant Rallos for plaintiff to have an outside consultation

for total knee replacement surgery.  At that time, plaintiff's knees had not been examined by defendant Kofoed, the orthopedic consultant, since he performed the right knee arthroscopic debridement surgery in 2003.  For this reason, it was not unreasonable for the MARC to request that plaintiff be evaluated by defendant Kofoed before referring plaintiff out for knee replacement surgery.

After it was determined that conservative treatments had not worked, including the arthroscopic debridement procedure, the MARC approved defendant Kofoed's recommendation that plaintiff receive knee surgery.  This decision also does not demonstrate deliberate indifference.

In his opposition, plaintiff contends that he was wrongly denied knee replacement surgery because of his weight.  Plaintiff argues that he could not lose weight because he was not provided with a special diet or otherwise given the means to lose weight.  (Plaintiff does not indicate that he attempted any available self-help in this matter, i.e., eat less, exercise more).  While the MARC considered plaintiff's weight in June 2005 when it referred plaintiff for the consultation with defendant Kofoed, it authorized the knee replacement surgery in December 2005 when it was clear that conservative treatment was not effective.  Plaintiff was not denied knee replacement surgery because of his weight.  Accordingly, defendant Thor should be granted summary judgment based on any claim regarding the decisions made by the MARC.

Defendant Thor was also involved in the scheduling of plaintiff's knee surgery.  On January 26, 2006, Dr. Shiflett at QVH recommended knee replacement surgery.  Plaintiff had this surgery on August 30, 2006, approximately 8 months after it was recommended.  In his declaration, defendant Thor explains that this delay was caused by difficulty concerning logistics, custody guarding procedures and rehabilitation scheduling when he first attempted to schedule the surgery at UCSF.  These circumstances which caused the 8 month delay do not demonstrate deliberate indifference by defendant Thor.

\\\\\

1    In his opposition, plaintiff states that it is his "understanding" that UCSF treats

2    many prisoners.  Plaintiff argues that he does not understand why there would be a problem

3    treating him.  Defendant Thor stated that plaintiff could not have his surgery at UCSF due to

4    scheduling of the surgery and rehabilitation.  Plaintiff offers no evidence that other inmates

5    received knee replacement surgery at UCSF and were transported there for rehabilitation.

6    For the reasons discussed above, defendant Thor should be granted summary

7    judgment as to any claim that he delayed in scheduling plaintiff's knee surgery.

8    *Defendant Traquina*

9    Defendants move for summary judgment as to defendant Traquina on grounds that

10    he did not act with deliberate indifference to plaintiff's serious medical needs.  The court will

11    summarize defendant Traquina's treatment of plaintiff below.

12    On November 27, 2002, defendant Traquina evaluated plaintiff's knees and issued

13    him a chrono for a knee brace.  Plaintiff received the arthroscopic debridement procedure on his

14    right knee approximately 1 ½ months later on January 13, 2003.  On January 16, 2003, defendant

15    Traquina evaluated plaintiff following his surgery.  He renewed plaintiff's medication and issued

16    chronos for crutches and a lay-in.

17    Defendant Traquina was also a member of the June 7, 2005, MARC which denied

18    defendant Rallos's request for plaintiff to receive an outside orthopedic consultation for knee

19    replacement surgery.  He was also a member of the August 25 2005, MARC that approved the

20    request for the arthroscopic debridement procedure in plaintiff's left knee and the MARC that

21    later approved the request for knee replacement surgery.  According to his declaration submitted

22    in support of the summary judgment, defendant Traquina may also have been involved in the

23    scheduling of the right knee replacement surgery.

24    Defendant Traquina's treatment of plaintiff on November 27, 2002, and January

25    16, 2003, did not demonstrate deliberate indifference to plaintiff's serious medical needs.

26    Defendant Traquina treated plaintiff's knee problems and did not contribute to his delay in

1   receipt of surgery.

2          Defendant Traquina should be granted summary judgment as to the claims based

3   on his participation on the MARC and the scheduling of the right knee replacement surgery for

4   the same reasons defendant Thor should be granted summary judgment as to these claims.

5          Accordingly, for the reasons discussed above, defendant Traquina should be

6   granted summary judgment in his personal capacity.

7                    *Defendant Tan*

8          Defendants move for summary judgment as to defendant Tan on grounds that he

9   did not act with deliberate indifference to plaintiff's serious medical needs.  The court will

10  summarize defendant Tan's treatment of plaintiff.

11         On May 18, 2005, defendant Tan examined plaintiff for knee pain.  He ordered x-

12  rays and prescribed pain medication.   A few weeks later on June 3, 2005, defendant Rallos

13  submitted the request to the MARC for an orthopedic consultation for plaintiff.  Defendant

14  Rallos's notes from June 3, 2005, indicate that this request was made after reviewing the x-rays

15  ordered by defendant Tan.  Rallos declaration, exhibit A, p.560.

16         The treatment provided by defendant Tan does not demonstrate deliberate

17  indifference to plaintiff's serious medical needs.  As a result of the x-rays ordered by defendant

18  Tan, defendant Rallos was able to start the process by which plaintiff finally received knee

19  replacement surgery.  Accordingly, defendant Tan should be granted summary judgment based

20  on his treatment of plaintiff in May 2005.

21         On February 6, 2006, defendant Tan saw plaintiff for pain management.  Plaintiff

22  did not want to take methadone but refused the alternative medication offered by defendant Tan.

23  According to the entry in plaintiff's medical records by defendant Tan, plaintiff told him, "I'll

24  take care of myself."  Tan declaration, Exhibit A, p. 545.  On March 13, 2006, defendant Tan

25  saw plaintiff for knee pain.  He prescribed Darvocet and advised plaintiff to lose weight.  On

26  April 24, 2006, defendant Tan saw plaintiff for knee pain and changed his medication from

                                        24

1   Darvocet and Tylenol # 3.  On June 6, 2006, defendant Tan saw plaintiff for medication renewal

2   for both knees.  Defendant Tan restarted methadone.

3          The treatment described above does not demonstrate deliberate indifference to

4   plaintiff's serious medical needs.  In his declaration attached to his opposition, plaintiff alleges

5   that he refused the methadone because it made him sick.  Plaintiff states that he returned to the

6   methadone when the pain became too great.  Plaintiff alleges that defendant Tan knew of his pain

7   but did nothing about it.

8          According to the evidence, defendant Tan offered alternative pain medication to

9   plaintiff which he initially refused but then accepted (Darvocet, Tylenol # 3).  Plaintiff started

10  methadone again because, according to plaintiff, the other pain relievers were not effective.

11  Plaintiff offers no expert evidence demonstrating that the treatment provided by defendant Tan

12  amounted to deliberate indifference.  Plaintiff offers no evidence, for example, that defendant

13  Tan should have prescribed a different type of pain reliever.   Accordingly, defendant Tan should

14  be granted summary judgment.

15         In his opposition, plaintiff also claims that defendant Tan was a member of the

16  MARC.  Assuming this is true, then defendant Tan should be granted summary judgment for the

17  decisions of the MARC for the same reasons the court recommends that defendant Thor and

18  Traquina be granted summary judgment as to this claim.

19         *Defendant Grannis*

20         Plaintiff alleges that defendant Grannis learned of the alleged violations

21  committed by the other defendants through the grievance process and failed to correct them.

22  Attached as an exhibit to the amended complaint is a copy of the grievance denied by defendant

23  Grannis.  The appeal response dated December 15, 2005, states, in relevant part,

24         I. **Appellant's Argument**

25         It is the appellant's position that he is not receiving adequate medical services.
     The appellant is requesting to receive knee surgery and not to be assigned to any

26         duty that will cause him pain or exacerbate his condition.  The appellant is

requesting to receive knee surgery and not to be assigned to any duty that will cause him pain or exacerbate his condition. The appellant is requesting to be awarded "damages for any failure to immediately provide the treatment."

II. **Second Level's Decision**

The reviewer found that the appellant has severe pain and restricted mobility of both knees due to osteoarthritis. The appellant had arthroscopic surgery for his right knee two years ago. A further consultation with an orthopedic specialist was needed before surgery was approved. The Medical Authorization Review Committee has approved the surgery. The appellant already has a light duty chrono which delineates his physical limitations. The appellant's request for a monetary award is not supported.

III. **Director's Level Decision.**

Appeal is denied.

A. Findings: The appellant received knee surgery on September 20, 2005. He has been prescribed medication and he is scheduled for a follow-up exam in the clinic next week (week of October 11, 2005). The evidence presented provides that the appellant has access to medical services deemed appropriate by medical personnel. California Code of Regulations, Title 15, CCR 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness for inmates. In this particular matter, the medical records and professional staff familiar with the appellant's medical history support the contention that the appellant is receiving adequate medical care.

Amended Complaint, Exhibit 18.

By December 2005, plaintiff had received the arthroscopic debridement procedure on his left knee. On December 29, 2005, knee replacement surgery had been approved. Therefore, by the time defendant Grannis denied plaintiff's appeal, the material delay in plaintiff's surgery had already occurred. In other words, defendant Grannis did not cause plaintiff's delay in surgery. While plaintiff did not receive knee replacement surgery until August 2006, there is no evidence that the response by defendant Grannis to the appeal contributed to the approximate 8 month delay in plaintiff's receipt of the surgery. For these reasons, defendant Grannis should be granted summary judgment.

*Injunctive Relief*

As discussed above, plaintiff also seeks injunctive relief. In his opposition, plaintiff claims that he is still in great pain. It is also not clear whether plaintiff received knee

26

1   replacement surgery on his left knee.  Defendants have not addressed plaintiff's request for

2   injunctive relief.

3          The only defendant capable of responding to a request for injunctive relief is

4   defendant Traquina, the Chief Medical Officer at CSP-Solano.  Accordingly, the court

5   recommends that defendant Traquina be denied summary judgment in his official capacity.

6          Accordingly, IT IS HEREBY ORDERED that plaintiff's November 26, 2007,

7   motion to compel be denied;

8          IT IS HEREBY RECOMMENDED that defendants' February 21, 2008, summary

9   judgment motion be denied as to defendant Traquina in his official capacity and as to defendant

10  Kofoed; the motion should be granted in all other respects.

11         These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.  The parties are advised

17  that failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: 08/12/08

20                                          /s/ Gregory G. Hollows

21                                          _____
                                            UNITED STATES MAGISTRATE JUDGE

22  card.sumju

23

24

25

26